

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00230-CV

IN THE INTEREST OF A.T.,
A CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 323-103476-16

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

This is an ultra-accelerated appeal[2] in which Appellant A.T. (Father) and

Appellant T.N. (Mother) appeal the termination of their parental rights to their

----

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. R. Jud. Admin. 6.2(a) (requiring appellate court to dispose of appeal from a judgment terminating parental rights, so far as reasonably possible, within 180 days after notice of appeal is filed).

son, Andrew.[3]  In two issues, Father challenges the sufficiency of the evidence to support the trial court's findings under section 161.001(b)(1)(D), (E), (N), and (2). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (N), (2) (West Supp. 2016). Mother's attorney has filed an *Anders*[4] brief.  For the reasons set forth below, we will affirm the trial court's judgment as to both Father and Mother.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Overview

The record reflects that Father, who lives in Michigan, was not an active participant in Andrew's life from the time he was six months old through age five and that Father has not seen Andrew since Mother and Andrew moved to Texas in 2015 when Andrew was three years old.  After Andrew was removed from Mother due to her drug use and neglectful supervision of him, the Department of Family and Protective Services contacted Father and gave him the opportunity to reconnect with Andrew.  Father, however, failed to establish a relationship with Andrew, and his home study revealed that he lives with a registered sex offender—both of which led to the termination of Father's parental rights to Andrew.  Because Father challenges the sufficiency of the evidence to support

---

[3]*See* Tex. R. App. P. 9.8(b)(2) (requiring court to use aliases to refer to minors in an appeal from a judgment terminating parental rights).

[4]*Anders v. California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 1400 (1967); *see also In re K.M.*, 98 S.W.3d 774, 776–77 (Tex. App.—Fort Worth 2003, no pet.) (holding *Anders* procedures apply in parental-rights termination cases), *disp. on merits*, No. 02-01-00349-CV, 2003 WL 2006583 (Tex. App.—Fort Worth May 1, 2003, no pet.) (mem. op.).

the trial court's section 161.001(b)(1) and (b)(2) findings, we set forth a detailed summary of the evidence.

## B. Prior History with Child Protective Services (CPS)

The record reflects that Andrew was first removed from Father and Mother's care shortly after his birth in January 2012:

> [Mother] submitted to an oral drug screen and a hair follicle on 1/10/2012, the hair follicle was positive for marijuana; the oral drug screen was negative. [Father] is the legal father of [Andrew]; however, he has not been compliant with CPS regarding services. [Mother] has been referred to Families First through Catholic Charities of West Michigan and is currently being compliant. [Mother] is also in the process of being referred to the YWCA for domestic violence counseling. [Mother] is also being asked to attend NA groups regarding her substance abuse. [Mother] has been referred to Human Resource Associates; however, she has already missed two appointments in 2011, therefore she needs to attend this psychological evaluation or they will not reschedule her.

> An order was granted . . . on 1/19/2012, placing [Andrew] in the care and custody of DHS; however, [Mother] refused to cooperate. . . . The preliminary hearing on 1/30/2012 was adjourned; however, [Andrew] was ordered back into the home with [Mother].

The record further demonstrates that Mother had numerous other referrals regarding her other children while she lived in Michigan, including cases in which her parental rights to her other children were terminated.

## C. The Department's Contact with Mother

In February 2015 when Andrew was three years old, Mother and Andrew moved to Texas to escape from Mother's CPS history in Michigan, and Father lost touch with them. In October 2015, the Department in Texas received a referral involving concerns that Andrew was not being supervised and that an

3

odor of marijuana was emanating from Mother's apartment. After Mother tested positive for drugs on multiple occasions and her child safety placements fell through, the Department placed Andrew in foster care and offered Mother services. While Andrew was in foster care, Mother admitted that she was continuing to use drugs and did not work her services. Mother decided that she was going to move back to Michigan and requested and received a goodbye visit, which took place with Andrew on December 1, 2016. Two months later, Mother was back in Texas and requested for her visits to resume with Andrew. After the visits were resumed, Mother made only one visit; she arrived forty-five minutes late and admitted at the conclusion of the fifteen-minute visit that she was high.

### D. The Department's Contact with Father

In January 2017, after receiving Father's contact information from Mother, Lilian Bastidos, a conservatorship specialist with the Department, spoke with Father, and he agreed to be a placement for Andrew. Bastidos told Father that he would need to develop a realistic plan to bring Andrew into his home in Michigan, to keep communicating with Andrew, and to provide Bastidos with a list of possible relative placements. Bastidos talked to Father about the prior Michigan CPS cases, including the one in which Andrew was first removed from Father and Mother, and Father said that he had helped Mother work her services. Father provided financially for Andrew until he was six months old. Father explained that he had lost contact with Mother after the CPS case in

4

Michigan because he knew that she was "a drug head and all over the place." Father told Bastidos that despite living in Michigan, he wanted to have contact with Andrew. Father said that he did not have the equipment to FaceTime but agreed to phone calls with Andrew. Father sent photos to Andrew's foster parents via text so that they could share them with Andrew. Although there was no limit on how frequently Father could talk to Andrew by phone, Father ultimately participated in only two phone calls with Andrew—one on March 15, 2017, and one on March 18, 2017—before the termination trial was held in June 2017.

## E. The Home Study

The Department requested a home study on Father's home, and the Michigan CPS denied the placement of Andrew in Father's home because Father's wife is a registered sex offender who has twice been convicted for failing to register as a sex offender.[5] Because Michigan CPS's policies prohibited the placement of Andrew in Father's home, the Department also could not approve the placement of Andrew in Father's home. After the placement was denied, Father did not file a motion to contest the home study, nor did he initiate any other phone calls with Andrew.

---

[5]When Bastidos asked Father and his wife whether they had any criminal history, Father did not mention that his wife had been convicted in February 2010 of "Misdemeanor Criminal Sexual Conduct – Fourth Degree - Victim Between 13–15 [years old]" and is an adjudicated sex offender. Bastidos expressed concern because she did not believe that Father was honest with the Department.

## F. Andrew's Life

Bastidos testified that at the time of the termination trial, Andrew was five years old, was living in a foster home, and was doing well. Bastidos described Andrew as "a very happy child, very playful, very funny," very loving, and very easy to get along with. Andrew did not have any diagnosed special needs, but he had exhibited some "quirky behaviors" that had concerned the foster parents and that might require evaluation in the future. Andrew had been placed in three foster homes—due to no fault of his own—while in the Department's care and was about to be placed in a fourth foster home, which was an adoption-motivated foster home. Bastidos testified that it was not ideal for Andrew to be in foster care and that he had remained in foster care because of the actions or inactions of both Father and Mother.

## G. The Department's Concerns and Recommendations

Bastidos testified that even if Michigan CPS had approved Father's home as a placement for Andrew, she would have concerns about placing Andrew with Father and his wife because Father does not have a relationship with Andrew and had not provided her with a plan for bringing Andrew into Father's home. Bastidos said that Father had not made establishing a relationship with Andrew a priority despite being given unlimited opportunity to contact Andrew. Father told Bastidos that he had not sought additional contact with Andrew—other than the two phone calls in March 2017—because Father was busy with his two daughters and with his pregnant wife. This was concerning to Bastidos because

6

Andrew is also his child, and Father did not seem committed to Andrew. Further, the Department bought a bus ticket for Father to attend the trial, but Father texted Bastidos that he had missed the bus. Father did not personally appear for the termination trial.[6] Bastidos testified that she was not surprised that Father had missed the bus "[b]ecause I don't know at this point if [Father] is committed or not."

Bastidos testified that she had never met Father and that was why there was no evidence that appointing Father as the managing conservator would significantly impair Andrew's physical health or emotional development or that placing Andrew with Father would have a negative effect on Andrew. Bastidos testified, however, that placing Andrew with Father would be unsafe because Father has no relationship with Andrew and had shown a lack of commitment to building a relationship with Andrew.

Bastidos testified that she had concerns about Father's financial stability because he did not send any financial support to Andrew and because Father told her that he felt like coming to Texas for the termination trial would be a waste of his resources because he might not be able to get Andrew back. Bastidos testified that Andrew deserves a parent who is willing to come and be a parent, regardless of whether Andrew would leave to go home with him that day or not.

---

[6]The record reflects that Father has a valid driver's license, that his car had been stolen and that he mainly utilized public transportation, but that his aunt routinely allowed him to borrow her vehicle.

7

The Department was also concerned about Father's prior CPS history. Bastidos testified that Father had voluntarily placed Andrew in an unsafe environment because he knew that Andrew was living with Mother and that she was a drug user, referring to Mother as "a drug head." Bastidos testified that it was not safe for Andrew to be with a parent (Mother) who was on drugs and that it was not stable for Andrew to be placed with someone (Father) who had made no effort to see him.

Bastidos, on behalf of the Department, asked the trial court to terminate Mother's parental rights to Andrew because she had not worked her services, had not been able to provide a safe and stable home for Andrew, and had continued to use drugs. Bastidos, on behalf of the Department, asked the trial court to terminate Father's parental rights to Andrew because Father had not tried to establish a relationship with Andrew and had prior CPS history in Michigan. As the conservatorship worker, Bastidos opined that Father was not able to meet Andrew's financial, physical, emotional, and educational needs and that Father had not demonstrated that he could provide Andrew with a safe and stable home because it was not safe to place Andrew in a home with a registered sex offender and because Andrew does not know Father due to Father's failing to establish a relationship with Andrew. Bastidos opined that it was in Andrew's best interest for the trial court to terminate Father's and Mother's parental rights

8

because they had not demonstrated an ability to parent or to protect Andrew.[7] Because Andrew's foster home at the time of the trial was not "adoption motivated," if the trial court terminated Father's and Mother's parental rights to Andrew, the Department planned to move Andrew to another licensed foster home with parents who were interested in adopting Andrew.

## H. Trial Court's Disposition

After hearing the testimony above and reviewing the evidence, the trial court found by clear and convincing evidence that Father's and Mother's actions satisfied the grounds listed in Texas Family Code section 161.001(b)(1)(D), (E), and (N) as alleged in the petition for termination and that termination of Father's and Mother's parental rights to Andrew was in Andrew's best interest. *See id.* § 161.001(b)(1)(D), (E), (N), (2).

## III. FATHER'S APPEAL

In Father's two issues, he challenges the sufficiency of the evidence to support the trial court's findings under section 161.001(b)(1)(D), (E), (N), and (2). Father argues that that the record is silent as to when, if ever, he had placed Andrew in an endangering environment and that "[h]is marriage to a registered sex offender might certainly have disqualified him from being considered as a

---

[7]Bastidos testified that the CASA volunteer's report supports the termination of Father's and Mother's parental rights; the report, however, was not included in the appellate record, and the CASA volunteer did not testify during the trial.

9

permanent placement for the child, but it did not rise to the level of termination of parental rights."

## A. Burden of Proof and Standards of Review

In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West 2014); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]hen the State seeks to sever permanently the relationship between a parent and a child, it must first observe fundamentally fair procedures." *In re E.R.*, 385 S.W.3d 552, 554 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 1391–92 (1982)). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *E.R.*, 385 S.W.3d at 554–55; *Holick*, 685 S.W.2d at 20–21.

Termination decisions must be supported by clear and convincing evidence. *See* Tex. Fam. Code Ann. § 161.001(b), § 161.206(a); *E.N.C.*, 384 S.W.3d at 802. Due process demands this heightened standard because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right.'" *E.R.*, 385 S.W.3d at 555 (quoting *Santosky*, 455 U.S. at 758–59, 102 S. Ct. at 1388); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002); *see also E.N.C.*, 384 S.W.3d at 802. Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of

10

the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *E.N.C.*, 384 S.W.3d at 802.

For a trial court to terminate a parent-child relationship, the Department must establish by clear and convincing evidence that the parent's actions satisfy one ground listed in family code section 161.001(b)(1) and that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b); *E.N.C.*, 384 S.W.3d at 803; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re C.D.E.*, 391 S.W.3d 287, 295 (Tex. App.— Fort Worth 2012, no pet.).

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the Department proved the challenged ground for termination. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence

11

favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.*

We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses because that is the factfinder's province. *Id.* at 573–74. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

We are required to perform "an exacting review of the entire record" in determining whether the evidence is factually sufficient to support the termination of a parent-child relationship. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated one of the provisions of section 161.001(b)(1) and that termination of the parent-child relationship would be in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## B. Section 161.001(b)(1) Findings

In his first issue, Father argues that the evidence is legally and factually insufficient to support the trial court's findings under section 161.001(b)(1)(D), (E), and (N). Under these subsections, termination is warranted if the trial court finds by clear and convincing evidence that the parent has

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:

> > (i) the department or authorized agency has made reasonable efforts to return the child to the parent;

> > (ii) the parent has not regularly visited or maintained significant contact with the child; and

> > (iii) the parent has demonstrated an inability to provide the child with a safe environment.

Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (N). We will begin by analyzing the evidence to support the endangerment findings in (D) and (E).

## 1. Law on Endangerment

"Endanger" means to expose to loss or injury, to jeopardize. *Boyd*, 727 S.W.2d at 533; *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under section 161.001(b)(1)(D), it is necessary to examine the

13

evidence related to the environment of the child to determine if the environment was the source of the endangerment to the child's physical or emotional well-being. *J.T.G.*, 121 S.W.3d at 125. When termination of parental rights is based on subsection (D), the endangerment analysis focuses on the evidence of the child's physical environment, but the environment produced by the conduct of the parents bears on the determination of whether the child's surroundings threaten her well-being. *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). A parent's decision to leave a child in the care of a known drug user is relevant to the predicate acts or omissions in subsection (D). *In re K.C.F.*, No. 01-13-01078-CV, 2014 WL 2538624, at *12 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.).

Under section 161.001(b)(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *See J.T.G.*, 121 S.W.3d at 125; *see also* Tex. Fam. Code Ann. § 161.001(b)(1)(E). It is not necessary, however, that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533; *J.T.G.*, 121 S.W.3d at 125. The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533; *In re R.W.*, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied). Moreover, a factfinder may infer from past conduct endangering the well-being of the child that similar conduct will recur if the child is returned to the parent. *In re M.M.*,

14

No. 02-08-00029-CV, 2008 WL 5195353, at *6 (Tex. App.—Fort Worth Dec. 11, 2008, no pet.) (mem. op.).

Because the evidence pertaining to subsections (D) and (E) is interrelated, we conduct a consolidated review. *See In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.); *J.T.G.*, 121 S.W.3d at 126.

### 2. Sufficient Evidence Supports Endangerment Findings

Here, the evidence reflects that Father has prior CPS history in Michigan. Andrew was placed in CPS's care in Michigan shortly after his birth due to Mother's positive drug test. The record reflects that Father was not compliant in working his CPS services for that case. The record further reflects that Father knew that Mother was a drug user and had even referred to her as a "drug head" and that he allowed Andrew to remain in Mother's care despite her drug use. Moreover, Father failed to contact Andrew from the time he was six months old until he was five years old, at which time he was back in CPS's care because Mother had neglected to supervise Andrew and because she had again tested positive for drugs.

Viewing all the evidence in the light most favorable to the trial court's judgment and recognizing that the factfinder is the sole arbiter of the witnesses' credibility and demeanor, we hold (1) that there is some evidence of endangering environment on which a reasonable factfinder could have formed a firm belief or conviction that Father had knowingly placed or had knowingly allowed Andrew to remain in conditions or surroundings that had endangered his emotional or

15

physical well-being and (2) that there is some evidence of endangering conduct on which a reasonable factfinder could have formed a firm belief or conviction that Father had engaged in conduct or had knowingly placed Andrew with persons who had engaged in conduct that had endangered his physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *K.C.F.*, 2014 WL 2538624, at *13 (holding evidence legally sufficient to support endangering-environment finding under (D) because father was aware of mother's illegal drug use and left children with her); *In re A.R.F.*, No. 02-13-00086-CV, 2013 WL 3874769, at *16–20 (Tex. App.—Fort Worth July 25, 2013, no pet.) (mem. op.) (holding evidence legally sufficient to support endangering-conduct finding under (E) because parents had, among other things, prior CPS history).

Giving due deference to the factfinder's endangering-environment and endangering-conduct findings, without supplanting the factfinder's judgment with our own, and after reviewing the entire record, we hold that a factfinder could reasonably form a firm conviction or belief that Father had knowingly placed or had knowingly allowed Andrew to remain in conditions or surroundings that had endangered his emotional or physical well-being and that Father had engaged in conduct or had knowingly placed Andrew with persons who had engaged in conduct that had endangered his physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E); *In re M.R.J.M.*, 280 S.W.3d 494, 504–05 (Tex. App.—Fort Worth 2009, no pet.) (holding evidence factually sufficient to

support endangerment findings under (D) and (E) because father had knowingly allowed child to remain in an endangering environment with mother by ignoring mother's drug use and by failing to check on child and that father had engaged in endangering conduct by neglecting child and by knowingly placing child with mother, a person who engaged in endangering conduct); *see also K.C.F.*, 2014 WL 2538624, at *13 (holding evidence factually sufficient to support endangering-environment finding under (D) because father was aware of mother's illegal drug use and left children with her); *A.R.F.*, 2013 WL 3874769, at *16–20 (holding evidence factually sufficient to support endangering-conduct finding under (E) because parents had, among other things, prior CPS history).

We overrule the portion of Father's first issue challenging the (D) and (E) endangerment findings. Moreover, because we have held that the evidence is legally and factually sufficient to support the endangerment findings, we need not address the remainder of Father's first issue challenging the sufficiency of the evidence to support the abandonment finding pursuant to section 161.001(b)(1)(N). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) (stating that only one predicate finding under former section 161.001(1)—now codified as section 161.001(b)(1)—is necessary to support termination judgment when there is also a best-interest finding).

17

## C. Section 161.001(b)(2) Best-Interest Finding

In his second issue, Father argues that the evidence is factually insufficient to demonstrate that termination of his parent-child relationship with Andrew was in Andrew's best interest pursuant to section 161.001(b)(2).

### 1. Best-Interest Factors

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

We review the entire record to determine the child's best interest. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). The same evidence may be probative of both the subsection (1) ground and best interest. *Id.* at 249; *C.H.*, 89 S.W.3d at 28. Nonexclusive factors that the trier of fact in a termination case may also use in determining the best interest of the child include the following: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider,

18

among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807. These factors are not exhaustive, and some listed factors may be inapplicable to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

### 2. Sufficient Evidence Supports Best-Interest Finding

With regard to Andrew's desires, the record reflects that Andrew was five years old at the time of the trial and that he did not testify. Father had talked to Andrew on the phone only twice during the three years preceding the termination trial. No evidence exists of any emotional bond between Andrew and Father. *See In re K.K.J.*, No. 02-13-00139-CV, 2013 WL 4506883, at *7 (Tex. App.—Fort Worth Aug. 22, 2013, no pet.) (mem. op.) (stating that there was little, if any, emotional bond between children and mother who had not visited children in ten months due to her incarceration). The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights to Andrew.

With regard to Andrew's emotional and physical needs now and in the future, his basic needs include food, shelter, and clothing; routine medical and dental care; a safe, stimulating, and nurturing home environment; and friendships and recreational activities appropriate to his age. Additionally, Andrew might need to be evaluated for special needs in the future due to some quirky behaviors that he had displayed in his foster home. The record reflects that

19

Father had virtually no contact with Andrew for almost two years and did not provide financially for Andrew's physical needs. The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights to Andrew.

With regard to the emotional and physical danger to Andrew now and in the future, the evidence demonstrates that Father had not established a relationship with Andrew and that Father lives with a registered sex offender. *See In re W.B.W.*, No. 11-11-00269-CV, 2012 WL 2856067, at *13 (Tex. App.— Eastland July 12, 2012, pet. denied) (mem. op.) (holding evidence legally sufficient to support best-interest ground because mother exposed children to a convicted sex offender). The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights to Andrew.

With regard to Father's parental abilities, the record demonstrates that Father left Andrew with a known drug user and had not parented Andrew during the two years prior to the trial. The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights to Andrew.

The record revealed that Father was not asked to work the normal list of services but was asked to develop a realistic plan to bring Andrew into his home in Michigan, to keep communicating with Andrew, and to provide Bastidos with a list of possible relative placements; he only provided the Department with information on his in-laws as a possible placement, and they decided not to

20

commit. The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights to Andrew.

With regard to the plans for the children by the individuals seeking custody, Father never presented Bastidos with a plan for Andrew. The Department's plan was to move Andrew to an adoption-motivated foster home that he had already been matched with and for Andrew to be adopted. The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights to Andrew.

With regard to the stability of the home or proposed placement, Michigan CPS's policies prohibited placement of Andrew with Father because Father lives with a registered sex offender. The record did not reflect the stability of the proposed placement because the Department planned to move Andrew to an adoption-motivated foster home pending the outcome of the termination trial. The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights to Andrew.

With regard to the acts or omissions of Father that may indicate the existing parent-child relationship is not a proper one, Father argues in his brief that his "omission, if any, was his failure to exert himself in locating the child after [Mother] regained custody and after she left the [S]tate of Michigan." The analysis set forth above—which reflects that Father knew Mother was a drug user and still left Andrew in her care, that Father did not pursue a relationship with Andrew after the Department gave Father the opportunity, and that Father's

21

home is not an appropriate placement because he lives with a registered sex offender—reveals that the existing parent-child relationship between Father and Andrew is not a proper parent-child relationship. The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights to Andrew.

As for any excuse for the acts or omissions of the parent, Father's appellate brief states that "he was busy raising his other children and helping his pregnant wife, and so he did not have the wherewithal or time to get involved in [Andrew's] life." The trial court was entitled to find that this factor weighed in favor of terminating Father's parental rights to Andrew.

Viewing all the evidence with appropriate deference to the factfinder, we hold that the trial court could have reasonably formed a firm conviction or belief that termination of the parent-child relationship between Father and Andrew was in Andrew's best interest, and we therefore hold that the evidence is factually sufficient to support the trial court's best-interest finding. *See* Tex. Fam. Code Ann. § 161.001(b)(2); *K.C.F.*, 2014 WL 2538624, at *19 (holding evidence factually sufficient to support best-interest finding because, among other things, father had allowed his children to remain in mother's care, knowing that she abused drugs).

We overrule Father's second issue.

22

## IV. MOTHER'S APPEAL

Mother's court-appointed appellate counsel has filed a motion to withdraw as counsel and a brief in support of that motion. In the motion, counsel avers that he has conducted a professional evaluation of the record and, after a thorough review of the applicable law, has reached the conclusion that there are no arguable grounds to be advanced to support an appeal of this cause and that the appeal is frivolous. Although given the opportunity, Mother did not file a pro se response. The Department filed a letter stating, "The State agrees with [Mother's] counsel that there [are] no arguable grounds for relief and that [Mother's] appeal is frivolous."

Counsel's brief and motion meet the requirements of *Anders v. California* by presenting a professional evaluation of the record demonstrating why there are no reversible grounds on appeal and referencing any grounds that might arguably support the appeal. *See* 386 U.S. at 744, 87 S. Ct. at 1400; *see also K.M.*, 98 S.W.3d at 776–77.

In reviewing an *Anders* brief, this court is not required to review the merits of each claim raised in the brief or in a pro se response. *See Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005). Rather, this court's duty is to determine whether there are any arguable grounds for reversal and, if there are, to remand the case to the trial court so that new counsel may be appointed to brief the issues. *Id.* Thus, we conduct an independent evaluation of the record to determine whether counsel is correct in determining that the appeal is

23

frivolous. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *K.M.*, 2003 WL 2006583, at *2.

We have carefully reviewed the appellate record and the *Anders* brief. Finding no reversible error, we agree with Mother's counsel that Mother's appeal is without merit. *See Bledsoe*, 178 S.W.3d at 827; *In re D.D.*, 279 S.W.3d 849, 850 (Tex. App.—Dallas 2009, pet. denied).

## V. CONCLUSION

Having overruled Father's second issue and the portion of his first issue challenging the trial court's endangerment findings under section 161.001(b)(1)(D) and (E), which are dispositive of his appeal, we affirm the trial court's judgment terminating his parental rights to Andrew. *See* Tex. R. App. P. 47.1 (providing that appellate court must address every issue raised and necessary for final disposition of appeal). Additionally, we affirm the trial court's judgment terminating Mother's parental rights to Andrew.

Because counsel's motion to withdraw from representing Mother does not show cause for the withdrawal other than counsel's conclusion that the appeal is frivolous, we deny the motion. *See In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (order); *In re C.J.*, 501 S.W.3d 254, 255 (Tex. App.—Fort Worth 2016, pets. denied).[8]

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DELIVERED:  October 26, 2017

---

[8]The supreme court has held that in cases such as this, "appointed counsel's obligations [in the supreme court] can be satisfied by filing a petition for review that satisfies the standards for an *Anders* brief." *See P.M.*, 520 S.W.3d at 27–28.